# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

———————

No. 16-40553

———————

HENIFF TRANSPORTATION SYSTEMS, L.L.C.,

Plaintiff - Appellant

v.

TRIMAC TRANSPORTATION SERVICES, INCORPORATED,

Defendant - Appellee

————————————

Appeal from the United States District Court
for the Eastern District of Texas

————————————

Before JOLLY, HIGGINBOTHAM, and GRAVES, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

Heniff Transportation Systems, LLC ("Heniff") was hired to transport chemicals from Texas to Illinois. It in turn hired Trimac Transportation Services, Inc. ("Trimac") to clean the tanker prior to the trip. The cleaning was not performed correctly, and the chemicals became contaminated. Heniff sued Trimac for the resulting damages. The district court dismissed Heniff's state law claims, finding that they were preempted by the Carmack Amendment, codified in relevant part at 49 U.S.C. § 14706 *et seq.*, which establishes a federal liability regime for claims concerning goods damaged or lost during transportation in interstate commerce. We agree with the district court that Heniff's claims are preempted by the Carmack Amendment because the service

United States Court of Appeals
Fifth Circuit

**FILED**

January 30, 2017

Lyle W. Cayce
Clerk

No. 16-40553

that Trimac provided, a tanker wash, was a "service[] related to [the] movement [of property in interstate commerce]," 49 U.S.C. § 13102(23). Accordingly, we affirm.

I.

Heniff provides transportation and product delivery services. Trimac provides a wide variety of transportation and delivery services including, among other things, cleaning services for tanker-trailers used by other transportation companies.

In November 2011, Heniff entered into an agreement with Huntsman Corporation ("Huntsman"), a chemical producer, to transport a load of chemicals from its plant in Texas to its customer, Lambent Technologies Corp. ("Lambent"), in Illinois. Knowing the chemicals might become contaminated if exposed to any cleaning agents or residue, Huntsman required that the tanker-trailer used for the transportation undergo a very thorough "Kosher wash." This wash was specified in the bill of lading that Huntsman issued.

Heniff contracted with Trimac to have its tanker washed the day before the trip. This practice was routine; Heniff rented storage space from Trimac and regularly used Trimac's cleaning services for its tankers. For whatever reason, the tanker did not receive a proper Kosher wash.[1] As a result of the inadequate wash, this new load of chemicals became contaminated. Additionally, after the contaminated chemicals were delivered and entered Lambent's facilities, the chemicals in turn contaminated other chemicals and damaged Lambent's equipment.

A few months later, Heniff, along with its insurer, Hartford Fire Insurance Company ("Hartford"), settled with Lambent for the damage caused

---

[1] The wash receipt that Trimac issued states that it administered a "special clean." The parties dispute what exactly went wrong with respect to which wash (a "Kosher wash" or a "special clean") was ordered, or whether the distinction had any practical impact.

No. 16-40553

by the contaminated shipment. They paid a combined $30,394 for the spoiled cargo and $208,516 for other damages to Lambent's property.

II.

In February 2015, Heniff filed this suit against Trimac in federal court in Illinois.[2] It alleged several state law claims relating to the contamination incident, as well as a federal claim for liability apportionment under the Carmack Amendment, *see* 49 U.S.C. § 14706(b). The court transferred the case to the Eastern District of Texas.

Trimac then moved for partial summary judgment on the state law claims. The district court granted the motion and held that all of Heniff's state law claims are preempted by the Carmack Amendment. It specifically found that the Carmack Amendment applied because Trimac was acting as a "carrier" under the statute because the tank-washing service that Trimac provided was a "service[] related to [the] movement [of property in interstate commerce]." *See* 49 U.S.C. §§ 13102(3), 13102(14), 13102(23).

Several months later, Trimac moved for summary judgment on the remaining Carmack Amendment apportionment claim. The district court granted that motion as well, finding that Heniff failed to comply with the procedural requirements outlined in the Carmack Amendment.

Heniff appeals the district court's holding that the state law claims are preempted.[3]

---

[2] Heniff and Hartford, in its capacity as subrogee of Heniff, initially jointly filed a suit asserting substantially identical allegations against Trimac in state court in Illinois. After that case was removed to federal court, both parties voluntarily dismissed their claims without prejudice. Hartford later refiled its claims, this time by itself, in state court in Texas. After that case was removed to federal court, and prior to Heniff's filing of the instant case, Hartford settled its claims with Trimac and voluntarily dismissed that case.

[3] Heniff does not appeal the finding that its federal apportionment claim failed due to failure to comply with the Carmack Amendment's procedural requirements.

No. 16-40553

III.

We review the grant of a motion for summary judgment de novo, applying the same legal standards as the district court. *Lifecare Hosps., Inc. v. Health Plus of Louisiana, Inc.*, 418 F.3d 436, 439 (5th Cir. 2005). We may affirm the district court's ruling on any grounds supported by the record. *Id.* Summary judgment is proper when the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In reviewing an appeal from summary judgment, we "view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *See Deville v. Marcantel*, 567 F.3d 156, 163–64 (5th Cir. 2009).

IV.

The only issue in this appeal is whether Heniff's state law claims are preempted by the Carmack Amendment. We hold that they are, and so affirm.

A.

The Carmack Amendment establishes the standard for imposing liability on a motor carrier for the actual loss or injury to property transported through interstate commerce. *Distribuidora Mari Jose, S.A. de C.V. v. Transmaritime, Inc.*, 738 F.3d 703, 706 (5th Cir. 2013). The Carmack Amendment generally preempts state law claims arising out of the shipment of goods by interstate carriers. *Id.* "The purpose of the Amendment is to establish [] uniform federal guidelines designed in part to remove the uncertainty surrounding a carrier's liability when damage occurs to a shipper's interstate shipment." *Id.* (citations and quotations omitted). The Amendment "provide[s] the exclusive cause of action for loss or damages to goods arising from the interstate transportation of those goods by a common carrier." *Hoskins v. Bekins Van Lines*, 343 F.3d 769, 778 (5th Cir. 2003) (emphasis omitted). This Court has repeatedly recognized the "broad reach" of the Carmack Amendment. *See, e.g., id.* at 777.

4

No. 16-40553

The Carmack Amendment provides, in relevant part:

**(a) General liability.--**

**(1) Motor carriers and freight forwarders.**--A carrier providing transportation or service subject to jurisdiction under subchapter I or III of chapter 135 shall issue a receipt or bill of lading for property it receives for transportation under this part. That carrier and any other carrier that delivers the property and is providing transportation or service subject to jurisdiction under subchapter I or III of chapter 135 or chapter 105 are liable to the person entitled to recover under the receipt or bill of lading. The liability imposed under this paragraph is for the actual loss or injury to the property caused by (A) the receiving carrier, (B) the delivering carrier, or (C) another carrier over whose line or route the property is transported in the United States or from a place in the United States to a place in an adjacent foreign country when transported under a through bill of lading and, except in the case of a freight forwarder, applies to property reconsigned or diverted under a tariff under section 13702. Failure to issue a receipt or bill of lading does not affect the liability of a carrier. . . .

**(b) Apportionment.**--The carrier issuing the receipt or bill of lading under subsection (a) of this section or delivering the property for which the receipt or bill of lading was issued is entitled to recover from the carrier over whose line or route the loss or injury occurred the amount required to be paid to the owners of the property, as evidenced by a receipt, judgment, or transcript, and the amount of its expenses reasonably incurred in defending a civil action brought by that person.

49 U.S.C. § 14706. The operative term "carrier" is defined as "a motor carrier, a water carrier, and a freight forwarder." 49 U.S.C. § 13102(3). "Motor carrier" is further defined as "a person providing motor vehicle transportation for compensation." 49 U.S.C. § 13102(14). The term "transportation" "includes" "equipment of any kind related to the movement of passengers or property," as well as "services related to that movement, including arranging for, receipt, delivery, elevation, transfer in transit, refrigeration, icing, ventilation, storage, handling, packing, unpacking, and interchange of passengers and property." 49 U.S.C. § 13102(23).

No. 16-40553

In other words, one who provides motor-vehicle-related "services related to [the] movement [of passengers or property in interstate commerce]," 49 U.S.C. § 13102(23), provides a "service subject to [the] jurisdiction" of the Carmack Amendment, *see* 49 U.S.C. § 14706(a), and any state law claims asserting "loss or damages to goods" in connection to those services are preempted by the Amendment. *Hoskins*, 343 F.3d at 778 & n.7; *see also Transmaritime*, 738 F.3d at 706.

## B.

We hold that the service that Trimac provided—cleaning Heniff's tanker-trailer so that it could be used to transport chemicals from Texas to Illinois—was a "service[ ] related to [the] movement [of passengers or property in interstate commerce]." 49 U.S.C. § 13102(23). Accordingly, Trimac was providing "transportation," 49 U.S.C. § 13102(23), and was thus acting as a "motor carrier," 49 U.S.C. § 13102(14), and was thus a "carrier," 49 U.S.C. § 13102(3), and was thus subject to the Carmack Amendment, *see* 49 U.S.C. § 14706(a)(1) (providing that a "carrier . . . that delivers the property and is providing transportation or service subject to jurisdiction under [the Carmack Amendment] . . . [is] liable to the person entitled to recover"). Heniff's state law claims pertaining to the damage of goods caused by these services, which are the subject of this appeal, are thus preempted by the Amendment. *See* 49 U.S.C. § 14706(a)(1); *Transmaritime*, 738 F.3d at 706.

Heniff makes, in effect, two arguments that its claims are not preempted by the Carmack Amendment. Neither is compelling.

First, Heniff argues that the tanker wash service that Trimac provided was not a "service[] related to [the] movement [of passengers or property in interstate commerce]," because it is dissimilar to the examples of services provided in the statute.

6

No. 16-40553

But the plain language of the statute compels a finding that the tanker wash was such a "service." "Transportation" "includes . . . services related to [the] movement [of passengers or property in interstate commerce], *including* arranging for, receipt, delivery, elevation, transfer in transit, refrigeration, icing, ventilation, storage, handling, packing, unpacking, and interchange of passengers and property." 49 U.S.C. § 13102(23) (emphasis added). As the district court correctly noted, the phrase "including" in the statute indicates that the examples of "services" listed in the statute are an illustrative and non-exhaustive list. *See Include*, Black's Law Dictionary (10th ed. 2014) ("The participle *including* typically indicates a partial list . . . But some drafters use phrases such as *including without limitation* and *including but not limited to*—which mean the same thing."). Washing a tanker-trailer using industrial cleaning methods so that the tanker-trailer may transport chemicals from one state to another is plainly a "service[] related to [the] movement [of passengers or property in interstate commerce]." 49 U.S.C. § 13102(23).

Indeed, the "Kosher wash" was so critical to this shipment of goods that the bill of lading *explicitly required* that such a wash occur prior to shipment. Further, the service—that is, preparing a vessel for safe transport of the cargo—is analogous to several of the examples listed in the statute, including "arranging for," "handling," "refrigeration," "icing," and "ventilation." This holding is also consistent with the "broad reach" that courts assign to the Carmack Amendment, *Hoskins*, 343 F.3d at 777, as well as the purpose of the Amendment: a uniform liability regime for causes of action stemming from "the

No. 16-40553

loss or damages to goods arising from the interstate transportation of those goods by a common carrier." *Id.* at 778 (emphasis omitted).[4]

Second, Heniff argues that because Trimac was never a party to any bill of lading—the bill of lading in this case was between Heniff and Huntsman—and because the bill of lading was not actually issued until after the wash was performed, Trimac is not subject to the Carmack Amendment.

But this argument ignores the plain language of the Amendment, which states that "[f]ailure to issue a receipt or bill of lading does not affect the liability of a carrier." 49 U.S.C. § 14706(a)(1); *see also Kawasaki Kisen Kaisha Ltd. v. Regal-Beloit Corp.*, 561 U.S. 89, 102–03 (2010) ("Carmack applies only to transport of property for which Carmack requires a receiving carrier to issue a bill of lading, regardless of whether that carrier erroneously fails to issue such a bill . . . The decisive question is not whether the . . . carrier in fact issued a Carmack bill but rather whether that carrier was required to issue a bill by Carmack's first sentence."). The terms of the bill of lading and whether a bill is issued *at all* are irrelevant to the applicability of the Carmack Amendment.[5]

---

[4] In support of its non-preemption argument, Heniff cites only one unpublished district court decision, *D.M. Best Co. v. Summit Worldwide, LLC*, No. CIV. A. H-08-1279, 2009 WL 5061776 (S.D. Tex. Dec. 15, 2009). The *D.M. Best* court found that a company hired to load equipment onto trailers for transportation by the carrier did not fall within the scope of the Carmack Amendment. *Id.* at *2. That decision, however, appears incorrect in the light of the plain language of the Amendment, which provides a non-exclusive list of "services" and also specifically enumerates "arranging for," "handling," "packing," and "unpacking" as services within the purview of the Amendment. Further, the court relied on *Camp v. TNT Logistics Corp.*, 553 F.3d 502, 508 (7th Cir. 2009), stating the "Seventh Circuit has held that a party who loaded the cargo did not provide 'services related to' the movement of the goods." *D.M. Best*, 2009 WL 5061776 at *2. That appears to misread the Seventh Circuit's opinion; in fact, the Seventh Circuit grounded its decision on the fact that the party in question "was a third-party logistics company whose main focus was the timely and efficient procurement of auto parts." *Camp*, 553 F.3d at 508. The opinion does not suggest that the logistics company actually engaged in the labor of loading the cargo.

[5] *Accord Hubbard v. All States Relocation Servs., Inc.*, 114 F. Supp. 2d 1374, 1381 (S.D. Ga. 2000) ("[A] bill of lading is irrelevant to the applicability of the Carmack Amendment.").

No. 16-40553

Further, "[l]iability under the Carmack Amendment . . . extends beyond the carrier who actually provides the transportation. It extends to any carrier 'providing transportation or service.'" *Land O'Lakes, Inc. v. Superior Serv. Transp of Wis., Inc.*, 500 F. Supp. 2d 1150, 1155 (E.D. Wis. 2007) (quoting 49 U.S.C. § 14706(a)(1)). Indeed, the Carmack Amendment specifically provides for an apportionment remedy whereby one carrier may recover from another carrier "over whose line or route the loss or injury occurred." 49 U.S.C. § 14706(b).[6]

Heniff also suggests that because Trimac had no knowledge of the upcoming shipment and did not know that the particular tanker it was washing was going to be used to transport chemicals across state lines, it was not subject to the Carmack Amendment. But the Carmack Amendment does not have any scienter requirement; all that matters is whether the claims fall under the "jurisdiction" of the Carmack Amendment, which, as we have stated, they do here, regardless of whether Trimac knew as much at the time it provided the wash services.[7]

---

[6] Heniff actually brought such a claim under the Carmack Amendment in addition to its state law claims. In so doing, it specifically alleged that Trimac was a "motor carrier" under the Carmack Amendment because the statute defines "transportation" to include "services related to [the] movement of [people or property]." Complaint ¶¶ 30-33. The district court dismissed the Carmack claim for failure to comply with procedural requirements. Heniff did not appeal that ruling but appealed only the ruling that the state law claims were Carmack-preempted. In so appealing, it argues that the Carmack Amendment never applied at all to this transaction. Although pleading in the alternative may be permissible, the irony of Heniff's alternative pleading glitters.

[7] Because we hold that Heniff's claims are preempted based on the plain language of the statute, we need not consider Trimac's alternative arguments that (1) Trimac was a "motor carrier" because it had a properly published tariff with the Surface Transportation Board and (2) Heniff's claims were precluded based on holdings reached by the district court in the case between Hartford (Heniff's insurer) and Trimac.

No. 16-40553

V.

For these reasons, we hold that the tanker wash services that Trimac provided were "services related to [the] movement [of passengers or property in interstate commerce]," 49 U.S.C. § 13102(23), and thus Trimac was acting as a "carrier" subject to the Carmack Amendment. The judgment of the district court dismissing Heniff's state law claims as preempted is

AFFIRMED.